UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| V. | § § | 4:20-CR-330 |
| SANTIAGO CORDOVA-ESPINOZA | § § § | |

**Motion to Suppress**

TO THE HONORABLE DAVID COUNTS:

### Introduction

Santiago Cordova-Espinoza moves the Court to suppress the evidence obtained during the search of the hotel room he resided in. To resolve this motion, the Court need address two issues:

1. The Fourth Amendment prohibits the government and private parties acting on its behalf from searching residences, including hotel rooms, without a warrant. Agents suspected illegal aliens occupied a hotel room in Alpine, Texas. After they knocked on the door for ten minutes, the hotel manager opened the door to allow them to see inside. They saw three men, Cordova among them, who admitted to being illegally in the country. Did the officers violate Cordova's Fourth Amendment rights?

2. Fifth Circuit precedent bars the suppression of a person's identity or immigration file. The government charges that Cordova violated 8 U.S.C. § 1326. It must prove that he (a) is an alien, (b) who was deported, and (c) later was found in the United States, (d) without having asked for permission to return. The government's agents found Cordova through an unlawful search of the hotel room he occupied. Should the evidence that Cordova was found in the United States be suppressed?

**Summary of Facts**

On a Monday morning, a person provided Cordova and two traveling companions transportation from the side of a highway to Alpine, Texas, after they had hiked in the desert. The person took them to the OYO hotel in Alpine. The person used a key to open the door to the hotel and permitted Cordova and the others to stay inside. While he was inside, Cordova was furnished with pizza and water. He understood that he would be permitted to stay in the hotel room for as long as he needed.

That afternoon, Homeland Security Investigations agents received a tip that illegal aliens were staying at the OYO hotel. The agents traveled to the hotel to investigate. They identified one room they believed was occupied by illegal aliens; they knocked on the door in an attempt to talk the occupants. After at least ten minutes, no one answered the door.

Agents spoke with the hotel manager. The manager opened the door, allowing the agents to speak with the occupants. During their conversation, the agents concluded that the occupants of the room, including Cordova, were illegally present in the United States and arrested them.

**Argument**

**1.    The government's search of Cordova's hotel room violated his rights.**

Because the government did not have a search warrant, the hotel manager's opening of the hotel room to allow officers to search Cordova's hotel room violated Cordova's Fourth Amendment rights.

Cordova, as an occupant of the hotel room, had a Fourth Amendment privacy right in its interior. "No less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures." *Stoner v. State of Cal.*, 376 U.S. 483, 490 (1964).

His right of privacy protected him from intrusions by hotel employees that exceeded those normally intendant on hotel occupancy. "[W]hen a person engages a hotel room he undoubtedly gives implied or express permission to such persons as maids, janitors, or repairmen to enter his room in the performance of their duties." *Id*. Beyond those normal duties, however, the hotel guest has a right to exclude hotel employees. "[Fourth Amendment] protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel." *Id*. Distilling the normal expectations of a hotel guest, courts have found: "hotel staff ha[ve] no authority even to enter [a guest's] room, except for housekeeping purposes, unless (1) [the guest] himself consent[s] or (2) his tenancy [i]s terminated." *United States v. Bass*, 41 Fed. Appx. 735, 737 (6th Cir. 2002) (unpublished).

The manager of the OYO Hotel opened Cordova's hotel room for purposes other than housekeeping, without terminating his tenancy, and without his consent. The manager exceeded his authority by opening Cordova's hotel room.

Because the manager, not the agents, opened the room, Cordova's Fourth Amendment rights were violated only if the manager was acting as an agent of the government. "It is well settled that if a private party wrongfully conducts a search or seizure of another's . . . property the Fourth Amendment is not violated . . . . The question is whether, in view of the circumstances of the case, the private party acted as an instrument or agent of the Government when he conducted the search." *United States v. Blocker*, 104 F.3d 720, 725 (5th Cir. 1997). In determining whether a private party acts as an agent of the government, the Fifth Circuit considers whether: (1) the government knew or acquiesced in the intrusive conduct and (2) the private party intended to assist law enforcement, instead of furthering his own ends. *Id*.

The government knew of the manager's actions; the agents watched as he opened the door without Cordova's consent. The agents have stated that the hotel manager decided, on his own, to conduct a "wellness check." Assuming that is accurate, the agents' conduct—knocking on the door for ten minutes and inquiring of

3

the hotel manager who occupied the room—shows that the "wellness check" was a mere pretext. The manager's true intention was to assist the government in its investigation.

Further, a "wellness check' was not a legitimate reason to gain access to the hotel room given that there was no reason to think there was an ongoing emergency. "[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. This 'emergency aid exception' does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. It requires only an objectively reasonable basis for believing that a person within the house is in need of immediate aid." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009). The agents suspected that the hotel room's occupants were in the country illegally and did not receive a response when they knocked on the door. Neither of those facts gave the officers an objectively reasonable basis for believing that a person in the hotel room was in need of emergency aid.

The agents observed the interior of the hotel room, only after an unsuccessful knock-and-talk that prompted the hotel manager to open the door and allow the agents to see inside. The hotel manager acted as an agent of the government. The agents' warrantless search violated Cordova's Fourth Amendment rights.

**2. The evidence obtained as a result of the illegal search of the hotel room should be suppressed.**

   *A.   Cordova's status as an alien as well as evidence in his immigration file should be suppressed.*

Binding Fifth Circuit precedent precludes the suppression of identity and immigration file evidence. *United States v. Roque-Villanueva*, 175 F.3d 345, 346 (5th Cir. 1999). Cordova raises this argument only to preserve it for Fifth Circuit *en banc* and Supreme Court review and to show how identity and immigration file evidence contrast with evidence of his finding. *See* Section 2B, *infra*.

The Fifth Circuit's decision in *Roque-Villanueva* is based on a cursory and erroneous interpretation of *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032 (1984). In *Lopez-Mendoza*, the Supreme Court found that an immigration court had jurisdiction over an immigrant petitioner despite his claim that he was unlawfully arrested; the case did not bear on the admissibility of evidence against him in a criminal trial. *Id*.

Well-reasoned decisions from other United States Courts of Appeals have found that *Lopez-Mendoza* does not affect Fourth Amendment claims, in contrast with the Fifth Circuit's decision in *Roque-Villanueva*. The "Fourth, Eighth, and Tenth Circuits . . . correctly distinguish between such a broad attempt to suppress one's identity itself and an attempt to suppress evidence relating to one's identity, such as statements made during an unlawful arrest." *United States v. Hernandez-Mandujano*, 721 F.3d 345, 355 (5th Cir. 2013), *cert. denied*, 135 S. Ct. 2134 (2014) (Jolly, J., specially concurring) (citing *United States v. Oscar-Torres*, 507 F.3d 224 (4th Cir. 2007); *United States v. Olivares-Rangel*, 458 F.3d 1104 (10th Cir. 2006); *United States v. Guevara-Martinez*, 262 F.3d 751 (8th Cir. 2013)).

Cordova believes evidence about his identity and immigration file should be suppressed as products of an unlawful search but recognizes that this position is foreclosed by previous Fifth Circuit cases.

> B. *Testimony that government agents found Cordova in the United States should be suppressed.*

This Court can and should suppress testimony by agents that they found Cordova in the United States. The agents' finding of Cordova was achieved only by illegally opening the door to the hotel room he occupied.

To convict Cordova of illegal reentry, the government must prove that he: (a) was an alien, (b) had been deported from the United States, (c) was found thereafter in the United States, and (d) had not received consent to apply for readmission to the United States. Fifth Circuit Pattern Jury Instructions (Criminal) 2.03 (2015). Consistent with the Fifth Circuit's previous holdings, Cordova urges this Court to

suppress evidence related to the third element—whether Cordova was found in the United States.

The government cannot rely on Cordova's presence in the courtroom to show that he was "found in" the United States. *See United States v. Herrera-Ochoa*, 245 F.3d 495, 502 (5th Cir. 2001) (Overturning a conviction for violating 8 U.S.C. § 1326 in which the government did not introduce evidence that the defendant was found in the United States because "[the defendant's] presence in the courtroom pursuant to his Fifth and Sixth Amendment rights under the Constitution is not inextricably linked to the government's charge in the indictment."). Instead, the government must prove that Cordova was found in the United States on the date alleged in the indictment. *Id*.

Cordova seeks to suppress testimony that the agents found him in a hotel room in Alpine as unconstitutionally obtained because it was the product of an illegal search. In both *Roque-Villanueva* and *Hernandez-Manduajno*, agents observed the defendants driving a car—finding them before they seized them. *Roque Villanueva*, 175 F.3d at 246 ("Border Patrol Agent . . . stopped a car driven by defendant."); *Hernandez-Mandujano*, 721 F.3d at 347 ("When Hernandez first drove past the agents, they noticed his hands were 'locked' on the steering wheel . . . ."). Because the officers had already found those defendants—by seeing them drive cars—the illegal seizures only accomplished the discovery of their immigration status. Here, in contrast, the agents did not see—or find—Cordova until they illegally searched his hotel room. His finding, thus, was the product of the illegal search and must be suppressed.

Suppression of the agents' finding of Cordova is consistent with suppression issues in other types of cases decided by the Fifth Circuit. Agents' observation of illegally present aliens are suppressed frequently, when a defendant is charged with violating 8 U.S.C. § 1324. In *United States v. Rangel-Portillo*, the Fifth Circuit considered a district court's denial of a motion to suppress the presence of three illegal aliens in the defendant's vehicle. 586 F.3d 376, 379 (5th Cir. 2009). The Fifth

Circuit found the denial of the motion to suppress to be in error, reversing because the officers lacked the reasonable suspicion necessary to stop the defendant. *Id*. at 383. If a defendant charged with alien smuggling can suppress an officer's finding of illegally present aliens in his car, Cordova must also be able to suppress the agents' finding of him in the hotel room.

## Conclusion

Government agents found Cordova because a hotel manager opened the door to his hotel room with the aim of permitting the agents to look inside. Because the hotel manager acted as an agent of the government, the search achieved by his actions violated Cordova's rights.

Over the last three years, the government has made the criminal prosecution of people illegally present in the United States a top law enforcement priority. Treating violations of 8 U.S.C. § 1326 as legally distinct from other crimes, incapable of producing suppressible evidence, permits the government to seize and search anyone, for any reason or no reason at all, while still achieving a top law enforcement goal. The only way to prevent such a practice is to suppress the agents' observations.

                                        Respectfully Submitted,

                                        MAUREEN SCOTT FRANCO
                                        Federal Public Defender

                                        /S/ Shane O'Neal
                                        SHANE O'NEAL
                                        Assistant Federal Public Defender
                                        108 N. 10th Street
                                        Alpine, Texas 79830
                                        (432) 837-5598
                                        Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

AUSA Monica Morrison
United States Attorney's Office
Alpine Division
2500 North Hwy, 118
Suite A200
Alpine, Texas 79830

                                                    /S/ Shane O'Neal
                                                    SHANE O'NEAL
                                                    Attorney for Defendant

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | 4:20-MJ-894 |
| SANTIAGO CORDOVA-ESPINOZA | § § § | |

**Order of Suppression**

The evidence discovered as a result of the unconstitutional search of the hotel room Santiago Cordova-Espinoza, including testimony by government agents that they found him in the United States, is suppressed.

Signed on the ___ day of July 2020.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE