UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | 4:20-CR-330 |
| | § | |
| SANTIAGO CORDOVA-ESPINOZA | § | |
| | § | |

### Reply in Support of Motion to Suppress

TO THE HONORABLE DAVID COUNTS:

### Introduction

The government argues against suppression of the agents' testimony about finding Cordova because "[t]he Oyo Hotel manager was not acting as an agent of the Government when he opened the hotel room."

Even if the Court credits the government's recitation of the facts, the law is clear that the manager acted as a government agent because the government participated with the manager in the search. The government seems to think that the search ended when the hotel manager opened the door; in fact, that is when it began.

### Government's Facts

The government expects the evidence to show that its agents arrived at the OYO Hotel, suspecting it was an active crime scene. They believed aliens were being harbored in room 114. After "the agents [ ] inquire[d] about the renting of the rooms and the manager's observations," "the hotel manager asked one agent about opening the hotel room door." (Doc. 19 at 3). "[T]he agent advised the manager the agent would need to speak with his supervisor before taking any further action [and] went to confer with his supervisor." *Id.*

The hotel manager's office is located across a large parking lot from room 114. Somehow, "[w]hile the agents were at the Oyo Hotel when the manager opened the hotel room door, none anticipated the manager would open the door . . . ." *Id.*

1

Nevertheless, "[a]fter the hotel manager opened the hotel room door, agents observed the Defendant and two other aliens in the hotel room." *Id.* at 1.

1. **Even if the government's facts are credited entirely and construed in the light most favorable to the government, they show that the hotel manager acted as a government agent.**

The fatal flaw in the government's response is that its analysis ends the moment the hotel manager opened the door. Even if the agents did not know the door was about to be opened, their acts after its opening show that the hotel manager acted as a government agent. "[A] search is a search by a federal official if he had a hand in it; . . . The decisive factor . . . is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means. It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress. So long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it. *Lustig v. United States*, 338 U.S. 74, 79 (1949) (cited in § 1.8(b) Government participation or specific instigation. Wayne R. LaFave. Search & Seizure. (5ᵗʰ ed.)).

In *United States v. Mekjian*, the Fifth Circuit applied *Lustig* to searches initiated by private parties but punctuated by the government's awareness of an ongoing search, "where federal officials . . . stand by watching with approval as the search continues, federal authorities are clearly implicated in the search and it must comply with fourth amendment requirements." 502 F.2d 1320, 1327 (5th Cir. 1975).

After the hotel manager opened the door, the agents (a) moved near to the hotel room, (b) looked inside, (c) observed the occupants, (d) spoke to the occupants, (e) discussed their immigration status, and (f) arrested them.

The government's version of the facts mirrors *Lustig* precisely. In *Lustig*, a federal agent told local police that two people occupied a hotel room and "that there was something wrong."[1] The federal agent "did not request the search, he was not the

---

[1] At the time *Lustig* was decided, suppression of the evidence in federal court could be avoided by showing that the evidence was obtained by state authorities. Courts have consistently applied the analysis in *Lustig*,

moving force of the search, . . . [which] was not undertaken by the police to help enforcement of federal law." 338 U.S. at 78. The local police searched the hotel room and found evidence of counterfeiting of currency. *Id.* at 76-77. When they called the federal agent, who had remained at their headquarters, he "came to the hotel and examined the evidence . . . ." *Id* at 77. The Supreme Court found that the contents of the search were inadmissible in federal court because the agent had participated in it. "[B]efore the search was concluded [the federal agent] was called in, and although he himself did not help to empty the physical containers of seized article he did share in the critical examination of the uncovered articles as the physical search proceeded." *Id.* at 78. Once the hotel manager opened the door, the agents shared in the critical examination of the room's occupants. Their observations must be suppressed.

The government cites *United States v. Ramirez*, in which a hotel manager, "following his usual procedure [when a rental period expires and he prepares it for new occupants], . . . examined the property in the abandoned room." 810 F. 2d 1338, 1340 (5th Cir. 1987). An agent had previously told the manager that he wanted to view any personal property if the room were determined to be abandoned. *Id.* at 1340. The Fifth Circuit in *dicta*, after deciding that there was no privacy interest in the abandoned hotel room, also found that the hotel manager had not acted as an agent. This case is distinct in a myriad of ways. In *Ramirez*, the manager acted according to "his usual procedure." Further, the officer did not know about his search. Finally, the officer certainly was not present on the property, looking over the threshold shortly after the manager opened the room.

It is not difficult to imagine scenarios in which this would be a closer case. The hotel manager could have entered the room, spoke with the occupants, and then exited, relaying information that officers would put in their search warrant.

---

substituting private parties for the local police. § 1.8(b) Government participation or specific instigation. Wayne R. LaFave. Search & Seizure. (5th ed.)

Alternatively, the manager could have opened the door and lured the occupants into a public space, permitting a consensual encounter between them and the agents. In either of those scenarios, there would have been a real question about whether the government acquiesced in the manager's intrusive conduct and whether the manager intended to assist law enforcement.

Here, the agents participated in the search. They not only knew about it, they approached to exploit it. The evidence obtained—including the agents' finding of Cordova—must be suppressed.

Respectfully Submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

/S/ Shane O'Neal
SHANE O'NEAL
Assistant Federal Public Defender
108 N. 10th Street
Alpine, Texas 79830
(432) 837-5598
Attorney for Defendant Cordova

4

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July 2020, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following:

AUSA Monica Morrison
United States Attorney's Office
Alpine Division
2500 North Hwy, 118
Suite A200
Alpine, Texas 79830


                                              /S/ Shane O'Neal
                                              SHANE O'NEAL
                                              Attorney for Defendant Cordova